IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANA MILENA SITU, et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 11-1225 (GAG) |
| JEROME O'NEILL, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiffs in this case are the relatives of decedent Laura Rodríguez Situ (the "decedent"). ECF Nos. 2; 27; 126. They allege, *inter alia*, that the decedent turned on a light switch to the bathroom of the apartment she rented, causing her apartment to explode and resulting in second degree burns covering 70% of her body and injuries to her lungs, and, ultimately, her death. See ECF No. 126. Plaintiffs claim that the negligence on behalf of Jerome O'Neill ("O'Neill"), the administrator of the property, and Elena Properties, Inc., the owner of the property, caused the decedent's injuries and demise. Id. Pending before the court is plaintiffs' motion pursuant to Federal Rule of Civil Procedure 56(d), in which they request for discovery to be reopened so that their expert witness can take samples of a gas pipe from the explosion site and perform testing on the pipe samples. ECF No. 372. Plaintiffs contend that defendants refused to allow the inspection of the explosion site until August 25, 2014, on the last week of discovery, and would not permit samples of the pipe that was uncovered during the inspection to be taken the day of the inspection or at any time before the close of discovery on September 1, 2014. Id. Defendants O'Neill, Elena Properties, Inc., and MAPFRE (collectively "defendants") have filed a response

in opposition (ECF No. 382) and a hearing on the motion was held on December 4, 2014. For the following reasons, the motion to permit examination of the gas pipe is denied.

### I.   Background

#### a.   Facts Not in Controversy

Based on the attorneys' expressions at the hearing there is consensus among the parties with regard to majority of the facts pertinent to the controversy at hand. On October 4, 2011 plaintiffs' expert witness on fire causation, Juan F. Charles Santana ("Dr. Charles"), first conducted an inspection of the explosion site. See ECF No. 349-25, at 3. On April 3, 2012 Dr. Charles conducted an inspection of the stove from the decedent's apartment to determine whether there was a leak in it. The stove inspection was performed at a location other than the Elena Properties building where the explosion occurred. On April 4, 2012 Dr. Charles conducted an inspection of two gas cylinders, which took place on the patio of the Elena Properties building. He did not walk into the explosion site on that day, but was not refused access to the site. On May 11, 2012 Dr. Charles issued his original expert report. Between May 20, 2013 and July 1, 2013 and again from August 22, 2013 through April 24, 2014 this case was stayed. See ECF Nos. 268; 303; 313. While the case was stayed Dr. Charles drafted a protocol for inspecting the explosion site (See Exhibit I), but no inspection took place during the stay.

When the stay was lifted for a second time, the court ordered the parties to submit a joint discovery plan, with all remaining discovery to conclude before September 1, 2014. ECF No. 313. In complying with this order, the parties proposed, *inter alia*, for the deposition of Dr. Charles to take place on July 10, 2014 and July 11, 2014 and for Dr. Charles to carry out an additional inspection of the explosion site on "[a]ny of the following dates: July 7, 9, 14, 28, 29 or 30, 2014." ECF No, 314, at 2-3. The court noted the motion in compliance and stated "[t]he

2

discovery plan is hereby approved and is FINAL." ECF No. 315 (emphasis in original). Dr. Charles was deposed on July 10, 2014, July 11, 2014, August 6, 2014, and August 22, 2011, for a half day on each of the four dates. On August 23, 2014, in anticipation of an inspection scheduled for August 25, 2014, defendants invited plaintiffs' counsel to come to the explosion site with a contractor plaintiffs had retained, in order to determine what tools would be needed to conduct excavation at the site. On August 25, 2014[1] Dr. Charles went to the explosion site to conduct the inspection outlined in the protocol dated June 24, 2013, which provides for excavation to be performed at the explosion site along a line labeled $C_1$-$C_2$. Exhibit I, at 1, 4. The protocol had been approved by Dr. Charles and by defendants' expert witness prior to the inspection.[2] At the August 25, 2014 inspection, Dr. Charles was permitted to conduct excavation at his will along the line labeled $C_1$-$C_2$ in the protocol, and made excavation holes at various points along the line. An electrical wire, rather than a gas pipe, was found on the diagonal portion of the line. Approximately at the point of inflection of the line labeled $C_1$-$C_2$ (See Exhibit I, at 4; Exhibit III), however, a gas line was found.[3] On the date of the inspection Dr. Charles was able to visually inspect the gas pipe, to touch it, to take photographs of it, and to take measurements of its placement. He wished to remove samples of the gas pipe for additional testing, but the defense did not permit him to take any samples. Dr. Charles issued a supplemental expert report on August 30, 2014.

---

[1] The parties agree that there an error regarding this date in Dr. Charles' affidavit in support of plaintiffs' Rule 56(d) motion. ECF No. 372-2, at 2. Dr. Charles states that he returned to the explosion site on May 26, 2014, but there is consensus that the affidavit should instead state he returned on August 25, 2014.

[2] While the parties agree that the protocol was exchanged between experts for both sides, they did not provide the dates on which this occurred.

[3] Defense counsel initially expressed doubt as to whether the gas pipe was uncovered at a point within the portion of the floor to be excavated according to the protocol. However, counsel for defendants agree with counsel Becker that the gas pipe was found approximately at the blue circle drawn on Exhibit III, which was in fact situated along the line labeled $C_1$-$C_2$.

b. **Disputed Facts**

Counsel Manual J. Ortega Nuñez for defendants asserts that he contacted plaintiffs' counsel on at least two occasions between April 24, 2014, when the stay was lifted, and August 25, 2014, when the inspection took place, to inquire when plaintiffs wanted to conduct the site inspection. He estimates that the first time he inquired was in late April 2014 or early May 2014 and that he asked about the inspection for the second time in the summer of 2014, which he thinks occurred at some time in June. Defense counsel contend that plaintiffs' counsel, Jane Becker Whitaker, informed them that she responded that she had to evaluate whether the inspection would be necessary, explaining that plaintiffs might be able to rely on the Fire Marshall's report to ascertain the information they desired, rendering the inspection moot. Counsel for defendants assert that the first time they became aware after the second stay was lifted that plaintiffs did in fact wish to conduct an additional inspection of the explosion site was during Dr. Charles's third deposition session, in which he was asked if he planned to do any additional work prior to trial and answered that he "was planning on doing a request to perform additional work in the investigation to do some digging in, throughout the trajectory where the pipes should be underground from the diagonal corner to the place where the stove was located." ECF No. 326-6, at 3-4. The transcript of the third session of Dr. Charles's deposition provides some corroboration for the contention that defense counsel were not aware on that date that plaintiffs wished to carry out the inspection before the close of discovery, as the transcript indicates counsel for defendants replied: "Okay. Now, regarding the excavation of the, excavation of the floor, I don't recall if that, if that request was made. It may have been probably made before the stay of the case so after the deposition I will talk to counsel and we'll see what we can do about that . . . ." ECF No. 326-6, at 5.

Counsel Becker maintains that defense counsel refused to allow the inspection to occur until Dr. Charles's deposition concluded. Counsel Becker denies that defense counsel Ortega contacted her to inquire about the inspection and denies indicating to defense counsel that she expressed that she was unsure whether the inspection would be necessary. She asserts that the fact that dates were included in the joint discovery plan for conducting the inspection evinces that plaintiffs did want the inspection to occur. Plaintiffs also cite to the time log completed by defendants' expert, engineer LaPina, which includes an entry on July 7, 2014 that states "review test protocol of past, prepare for testing," as evidence that plaintiffs had notified the defense of their desire to perform an additional inspection after the stay was lifted and prior to Dr. Charles's third deposition on August 6, 2014.[4] ECF Nos. 318-4, at 2; 372, at 3. Counsel Becker claims that defense counsel also wanted their expert witness to be present for the inspection, and that he would be available in Puerto Rico in late August. Counsel Becker explains that she did not object to Dr. Charles being deposed over the course of four dates because she thought defendants were entitled to get as much information as they wanted and that it was reasonable for defendants' expert to attend the inspection. She claims she did not wish to bring the matter to the court's attention so she agreed to conduct the inspection on August 25, 2014, after the fourth session of Dr. Charles's deposition concluded, as defendants desired.

## II.   Discussion

Rule 56(d) states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) "It provides a safety

---

[4] Aside from the deposition testimony cited to by defendants (ECF No. 326-6, at 5) and the time log cited to by plaintiffs (ECF Nos. 318-4, at 2), the parties have not brought any additional evidence to the court's attention, such as e-mails, letters, or faxes, to corroborate their version of the facts at issue.

valve for claimants genuinely in need of further time to marshal facts, essential to justify their opposition to a summary judgment motion." In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014) (citations and internal quotation marks omitted). "Such a need may arise because, say, a party has not had a fair opportunity to conduct necessary discovery." Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 28 (1st Cir. 2013) (citation omitted). "When the reason relates to incomplete discovery, the party's explanation must take a special form: it should show good cause for the failure to have discovered the facts sooner; it should set forth probable basis for believing specific facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Resolution Trust Corp. v. N. Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994).

     As a preliminary matter, this is not a case in which plaintiffs have been deprived of a reasonable opportunity to conduct discovery. Prior to the first stay, this case was active for over two years, during which time plaintiffs were able to amend the complaint on two occasions and were granted numerous extensions of time to complete discovery matters. ECF Nos. 27; 35; 40; 67; 78; 126; 147; 223. When the stay was lifted, the court granted parties over four additional months in which to conclude outstanding discovery. As noted in the order entered on October 6, 2014, denying an extension of time of the discovery cutoff in order to conduct testing on the gas pipe in question, plaintiffs had ample notice that the post-stay deadlines would be enforced strictly:

> When the stay was lifted, the court ordered the parties to submit a joint discovery plan, stating: "All discovery shall be completed on or before September 1, 2014. Dispositive motions shall be filed by October 1, 2014. *Deadlines are firm.*" ECF No. 313 (emphasis added). The court approved the parties' joint discovery plan, stating: "The discovery plan is hereby approved and is FINAL.

6

> Dispositive motions are due August 15, 2014." ECF. No. 314 (emphasis in original). The court then reset the dispositive motion deadline to October 1, 2014 once again, but ordered that "[a]ll discovery shall be completed on or before September 1, 2014" and emphasized that "[t]he joint discovery plan and deadlines included therein remains FINAL." ECF No. 317 (emphasis in original).

ECF No. 334, at 1-2. Notwithstanding these warnings, plaintiffs disregarded the dates for conducting an additional explosion site inspection that had been included in the joint discovery plan approved by the court. Although the protocol for conducting said inspection had been drafted during the stay in 2013, the inspection did not occur until August 25, 2014.

Ultimately, it is not necessary to make a credibility determination between the differing explanations offered by counsel for the parties for the delay until August 25, 2014 in holding the site inspection. Even accepting for argument's sake the explanation provided by counsel Becker—i.e. that defense counsel insisted on postponing the inspection until the final week of discovery and the defense was aware that plaintiffs wished to conduct the additional inspection once the stay was lifted—plaintiffs were not deprived of conducting the full additional inspection, as they had planned. The protocol approved by expert witnesses for both sides explicitly provides, among other things, that Dr. Charles "will verify the condition of external condition [*sic*] of any pipe discovered during this searching procedure" and that "[a]ll connections, fitting, nut, couplings, elbow, T, pipe (hose, galvanized or copper type will be inspected)." Exhibit I, at 1. It is uncontested that during the inspection on that date Dr. Charles was permitted to excavate and inspect the explosion site as outlined in the protocol that he drafted; Dr. Charles was able to visually and manually inspect the external condition of the gas pipe during the inspection, and was able to take photographs and measurements of the gas pipe and the "T" of the gas pipe. While the protocol contemplates the possibility that gas pipe would be found during the excavation and inspection of the explosion site, evincing that the same was

foreseeable to Dr. Charles, the protocol does not explicitly provide for gas pipe to be removed or for it to be sent for testing of any kind. Moreover, the parties have not brought to the court's attention that during Dr. Charles deposition or at any other point prior to August 25, 2014 he mentioned that he wished to remove gas pipe from the explosion site for testing.[5] Thus, while plaintiffs' assertion that the defense did not permit them to remove any gas pipe for testing during the August 25, 2014 inspection is undisputed, it is also clear that the protocol in effect for the inspection did not provide for doing so and that on August 25. 2014 Dr. Charles was allowed to perform everything that the protocol he agreed to circumscribes

Defense counsel explained at the hearing that prior to removing the gas pipe pressure testing of the pipe would need to be performed and an additional protocol detailing how the gas pipe would be removed, what tests would be performed, and where such tests would be conducted would need to be drafted and approved by experts for both sides. In denying plaintiffs' request to remove the pipe in the week of August 25, 2014 absent a court order, defense counsel explained that they did not believe that the pipe could be removed and sent for testing, that the test results could be received, that the expert reports could be supplemented, and new depositions could be taken prior to the discovery deadline set for September 1, 2014. In view of the numerous warnings that the deadline was firm, counsel for defendants did not act unreasonably in refusing to coordinate the removal of the gas pipe during the final week of discovery.

Acknowledging that the reason there was so little time left was that plaintiffs' counsel accommodated four sessions of Dr. Charles's deposition prior to holding the inspection, in doing so she disregarded the discovery deadlines that had been approved by the court; the First Circuit

---

[5] He did, however, indicate that he requested piping that had been previously removed from the owner of the property in question. See ECF No. 326-3, at 4.

Court of Appeals has "made it plain that 'a litigant who ignores case-management deadlines does so at his peril.'" Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 45-46 (1st Cir. 2002) (citing Rosario-Díaz v. González, 140 F.3d 312, 315 (1st Cir. 1998)). Plaintiffs did not request to modify the joint discovery table at any point after the court approved it. They explain that the delay in the inspection was due to the fact that defendants insisted on finishing the fourth session of Dr. Charles's deposition prior to commencing the inspection; however, by waiting until the final week plaintiffs did not leave sufficient time to in which to accommodate their request within the discovery deadline announced by the court. In the face of defendants' insistence, plaintiffs should have objected to postponing the inspection until the final week of discovery, and then promptly after conferring with defendants should have filed a motion to compel the inspection or for an extension of time of the dates in the joint discovery table, if the defense was unwilling to cooperate. Instead, plaintiffs' first brought the matter to the court's attention at the close of discovery (ECF Nos. 317; 318), after the inspection had already been postponed, and did not seek reconsideration of the denial of their motion for an extension of time for purposes of testing the pipe.

Not only have plaintiffs been afforded a fair opportunity to conduct discovery in this case, both in general and with regard to the additional inspectional of the explosion site specifically, but plaintiffs have not argued either in their written motion or at the hearing that testing the pipe is necessary or essential to justify their response in opposition to the pending motion for summary judgment. Plaintiffs seek the information in order to rebut defendants' expression in their reply brief that Dr. Charles cannot testify that the gas pipe was corroded because he had not tested the pipe.[6] They disagree with defendants that testing of the gas pipe is

---

[6] Typically, "a party must invoke Rule 56[(d)] within a reasonable time following receipt of a motion for summary judgment." Resolution Trust Corp., 22 F.3d at 1204. "[H]e must stake his claim to protection under Rule 56(d) at the

required for this purpose, asserting in their Rule 56(d) motion: "Eng. Charles saw and examined the pipe. Eng. LaPina saw and examined the pipe. The Court has seen photographs of the pipe. . . Anyone who saw the pipe knows that it is corroded. Anyone who examined it can testify as to its integrity." ECF No. 372, at 5. Furthermore, at the hearing Counsel Becker was asked directly if the testing of the pipe is necessary for purposes of opposing the pending summary judgment, such that "if [plaintiffs'] expert is not allowed to conduct this testing, [her] clients are going to lose on summary judgment." Counsel Becker conceded, "No, it is not. We're arguing in the alternative, Your Honor." Counsel for defendants concurred with counsel Becker that the testing is not necessary for opposing the motion for summary judgment. In light of the consensus that the sample and testing sought are not essential for plaintiffs to oppose the motion for summary judgment and the lack of an explanation by plaintiffs' of how the testing will be impact the outcome of the summary judgment motion, it does not appear that Rule 56(d) provides a basis for the relief plaintiffs request.

### III.    Conclusion

Plaintiffs have been afforded a fair opportunity to conduct discovery both before and after the stay of proceedings in this case. Their expert witness, Dr. Charles, first visited the explosion site over three years ago and prepared a protocol for an additional inspection of the site in June 2013. On August 25, 2014 Dr. Charles was able to conduct the additional inspection in accordance with the protocol he drafted. While he contemplated that gas pipe might be found during the inspection, he did not negotiate into the protocol for gas pipe to be removed during the

---

time he responds to the summary judgment motion (or, at least, at some time before the nisi prius court passes on that motion)." Nieves-Romero v. United States, 715 F.3d 375, 381 (1st Cir. 2013). In this case, over 45 days elapsed between the date the motion for summary judgment was filed, October 1, 2014, and the date of the filing of the Rule 56(d) motion, November 19, 2014, and plaintiffs did not raise the matter in their response in opposition to summary judgment. Noting this delay, given the other reasons for denying plaintiffs' motion articulated within this opinion it is not necessary to determine whether the motion should be denied on untimeliness grounds, as well.

inspection or to be sent for testing. As an expert in fire causation, the possibility of uncovering corroded gas pipe during the inspection should have been reasonably foreseeable. Although Dr. Charles was unable to remove samples of gas pipe that was discovered during the inspection, given that the inspection did not occur until the final days of the discovery period there was insufficient time to create a new protocol, remove portions of the pipe, test segments of the pipe, wait for the test results, amend the parties' expert reports accordingly, and re-depose the expert witnesses. Indeed, these additional steps in the discovery process could not have been accomplished within six days, prior to the discovery cutoff.

Given the exceedingly protracted procedural history in this case, the flexibility provided to plaintiffs on previous occasions in litigating this case, and the numerous warnings that the post-stay deadlines would be firm and final, plaintiffs' request to extend the discovery cutoff to test the gas pipe was denied after the close of discovery. See ECF No. 334. Plaintiffs seek once again to remove a sample of the pipe to conduct testing now that defendants' motion for summary judgment is pending. Not only do the reasons for denying the original motion apply once again to the matter before the court, but plaintiffs also have not articulated that conducting the testing they desire is essential for opposing the pending motion for summary judgment, as required by Rule 56(d) and plaintiffs' counsel has even conceded that it is not. In favor of their request to reopen discovery to test the gas pipe, plaintiffs assert that "defendants have not even articulated any potential prejudice to them" that would result from granting plaintiffs' motion. ECF No. 372. Nevertheless, the prejudice to defendants in reopening discovery to permit the creation of a new protocol, the removal of the sample, testing of the sample, an amendment to Dr. Charles's expert report and potentially an additional deposition of Dr. Charles, an amended rebuttal expert report, an additional deposition of defendants' expert, and a new motion for

summary judgment is readily apparent. Because plaintiffs' have previously been afforded significant latitude in prosecuting this case, have not been deprived of a meaningful opportunity to conduct discovery, and have not made a showing that the testing is necessary to oppose the pending motion for summary judgment, their Rule 56(d) motion to conduct additional testing to oppose defendants' motion for summary judgment (ECF No. 372) is denied.

 IT IS SO ORDERED

 In San Juan, Puerto Rico, this 9th day of December, 2014.

s/Marcos E. López<br>U.S. Magistrate Judge