**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**SITU, et al.,**

**Plaintiffs**

**v.**                                             **CIVIL NO. 11-1225 (GAG)**

**O'NEILL, et. al,**

**Defendants.**

**OPINION AND ORDER**

The present case arises from the damages Laura Rodríguez Situ (the "decedent") suffered and her ensuing death, allegedly caused by her turning on a light switch to the bathroom of an apartment she rented, which caused an explosion and resulted in second degree burns covering seventy percent (70%) of her body and injuries to her lungs.  (Docket Nos. 2; 27; 126.)  Plaintiffs in this case, all relatives of the decedent, filed suit for their own economic, mental and moral damages resulting from the loss of their family member.  (Docket No. 126.)  In addition, the decedent's heirs assert a survivorship claim on her behalf seeking restitution for the damages she personally suffered prior to her demise.  Id.  Plaintiffs, all citizens and residents of Colombia, invoke the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, claiming that Jerome O'Neill ("O'Neill"), the administrator of the property, Elena Properties, Inc. ("Elena Properties"), the owner of the property, and MAPFRE PRAICO Insurance Company, as their insurer, (collectively "Defendants") are liable for the decedent's injuries and death pursuant to Article 1802 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, § 5141.

Pending before the court are two motions for summary judgment filed by Defendants.  The first is Defendants' Motion for Summary Judgment asking the court to find that Plaintiffs failed to

**Civil No. 11-1225 (GAG)**

establish a causal connection between Defendants alleged failure to obtain the adequate state permits pertaining to the property's use and the use of propane gas and the explosion. (Docket No. 332.) Essentially, Plaintiffs move the court to enter a judgment as a matter of law regarding the absence of proof of the essential elements of Plaintiffs' negligence claim, namely a breach of Defendants' duty of care and proximate causation. Id. Defendants moreover ask the court to find that one of Plaintiffs' theories of liability, as asserted in their complaint—that a cause of the explosion was a small gas leak in the stove of the apartment—fails because said leak was inconsequential and not a proximate cause of the explosion. Id. at 2, 16-17.

Plaintiffs opposed the motion, arguing that indeed there is a causal connection between Defendants' acts and/or omissions and the resulting explosion. (Docket No. 347 at 3.) Further, Plaintiffs argue that Defendants, as owners and operators of a guesthouse, have a heightened legal duty as to their guests, and that Defendants violated that duty. As such, Plaintiffs argue that a reasonable jury could find that Defendants are liable because it was foreseeable that failing to comply with the law, failing to have the property duly inspected, and failing to obtain the applicable permits certifying the premise were safe could result in the sort of damage that occurred in this case. (Id. at 17.) Defendants replied to Plaintiffs' contentions (Docket No. 367) and Defendants lodged a sur-reply. (Docket No. 376.)

The second motion is O'Neill's Motion for Summary Judgment, requesting the dismissal of Plaintiffs' claims against him in his personal capacity because any liability should be borne by Elena Properties since any act and/or omission on his part was made in his capacity as an officer of the corporation. (Docket No. 329.) Plaintiffs opposed O'Neill's motion, arguing that the existence of genuine issues of material facts concerning O'Neill's negligence renders the motion improper. Further, Plaintiffs claim that Elena Properties is O'Neill's alter ego under a veil-piercing theory,

Civil No. 11-1225 (GAG)

and, therefore, the court should not respect the corporate form and impose personal liability. (Docket No. 350.)   O'Neill replied to Plaintiffs' opposition (Docket No. 365) and, in turn, Plaintiffs' sur-replied.  (Docket No. 377.)

After carefully reviewing the parties' submissions and pertinent law, for the reasons set forth below the court **DENIES** Defendants' Motion for Summary Judgment at Docket No. 332 and **DENIES** O'Neill's Motion for Summary Judgment at Docket No. 329

**I.    Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'"  Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R.Civ. P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of

Civil No. 11-1225 (GAG)

which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.   Id.   Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.   Relevant Factual and Procedural Background

On March 27, 2003, Elena Properties, a corporation organized under the laws of Puerto Rico, purchased from Mr. Virgilio Cordero a property located at Elena Street #6 (hereinafter "the property").  (Docket Nos. 329-1 ¶ 1; 351 ¶ 1.)  The property was thus owned by Elena Properties. Elena Properties is a corporation engaged in the business of renting apartments in the property. (Docket Nos. 329-1 ¶ 2; 351 ¶ 2.)  Defendants claim that Elena Properties, in conjunction with O'Neill personally, engaged in the business of operating and renting the property as a guesthouse. (Docket No. 351 ¶ 2.)  At all times relevant, O'Neill was the president and sole officer of Elena Properties.  (Docket Nos. 329-1 ¶ 3; 351 ¶ 3.)  As such, O'Neill administered the property.  (See Docket No. 126 ¶ 17.)

Use permit No. PU-65-5-0117 was issued to the property authorizing it to be occupied as a guesthouse.  (Docket Nos. 331 ¶¶ 2- 3; 348 ¶¶ 2-3.)  Said authorization was issued as to the second and first floors of the property.  (Id. ¶ 4; Id. ¶ 4.)  The use permit provides that the property may

4

**Civil No. 11-1225 (GAG)**

only be used for the purposes authorized therein.  (Docket Nos. 331 ¶ 5; 348 ¶ 5.)  A change in the use of the property entailed the issuance of a new use permit.  (Id. ¶ 6; Id. ¶ 6.)  Also, a change in tenants, if not a change in use, did not require a new use permit.  (Id. ¶ 7; Id. ¶ 7.)  On May 10, 2010, the date the explosion occurred, the property was being used as a guesthouse.  (Id. ¶ 9; Id. ¶ 9.)

From November 2009 through March 2010, Open Systems, the decedent's employer, rented from Elena Properties several apartments on the property for the use of the decedent and other employees.  (Docket No. 329-4.)  Elena Properties invoiced Open Systems for the rental fees of said apartments.  (Id. at 3-6.)  Open Systems paid Elena Properties for the rental through money transfers.  (Id. at 7-11.)

On March 10, 2010, there was an explosion and fire in apartment number five (hereinafter "the apartment") of the property, where the decedent was staying.  (Docket Nos. 329-1 ¶ 6; 351 ¶ 6.)  Plaintiffs contend that the decedent turned on a light switch to the bathroom of the apartment, causing the apartment to explode and resulting in second degree burns covering seventy percent (70%) of her body and injuries to her lungs, which ultimately caused her death.  (See Docket No. 126.)  The explosion was so violent that the decedent burst through the apartment door despite it being locked.  (Id. at 6.)  It also knocked the room's windows from their frames, melted appliances and burnt the room completely.  (Id.)  Plaintiffs contend that the decedent suffered and agonized through her treatment for burns for several days until she died at the age of 39.  (Id. at 7.)  The decedent suffered her injuries in the property and she died as a result of those injuries.  (Docket Nos. 329-1 ¶ 7; 351 ¶ 7.)

Plaintiffs claim that the decedent's neighbors called an ambulance, which took her to the burn unit of the Río Piedras Medical Center and that in her daze she kept repeating: "all I did was

Civil No. 11-1225 (GAG)

turn on the light." (Docket No. 126 at 6.)  O'Neill woke up by the explosion and extinguished the

flames with a garden hose before the firefighters arrived.  (Docket Nos. 351 ¶ 6; 364 ¶ 6; 329-3 at

12.)  The only person in the apartment at the time of the incident was the decedent.  (Docket No.

329-3 at 12-13.)

　　　　Plaintiffs agree that the property had a use permit.  However, Plaintiffs argue that O'Neill

had been previously fined for failing to obtain a permit from the Puerto Rico Fire Department.

(Docket Nos. 348 ¶ 2; 362-4.)  The Puerto Rico Firefighters Corps gave O'Neill an administrative

violation ticket as to the property on March 11, 2010, the day after the explosion.  (Docket No.

362-4.)  The administrative offense listed in the ticket states that the property "does not show

endorsement of the P[uerto] R[ico] Firefighters Corp."  Id.  Plaintiffs also claim that the

Defendants failed to comply with regulations in obtaining a permit from the Public Service

Commission, and the property failed to comply with the National Electrical Code.  (Docket Nos.

348 ¶ 2; 348-8.)

　　　　The following facts pertain to the cause of the explosion and are uncontested.  The

maintenance provided to the fire extinguishers located in the apartment, or lack thereof, had

nothing to do with the explosion.  (Docket Nos. 331 ¶ 17; 348 ¶ 17.)  A leak found in the stove of

the apartment during the inspection conducted on April 3, 2012, was not a proximate cause or

contributing factor of the explosion.  (Id. ¶ 21; Id. ¶ 21.)  Thus, Plaintiffs agree that the gas leak

from the stove did not cause the explosion.

　　　　While each party has its own theory of liability with regards to the cause of the explosion;

these contested theories are not presently before the court.  On one hand, Plaintiffs argue that the

cause of the explosion was a gas leak from the corroded pipes that were buried underground and

fed gas from the tanks to the stove.  They argue the gas leaked from the pipes through the cement

Civil No. 11-1225 (GAG)

floor soil, migrated down the electric conduit under the bed of the apartment and into the apartment the decedent rented, accumulating to a density and causing the explosion.  (Docket Nos. 348 ¶ 21; 347 at 7.)  On the other hand, Defendants argue that the decedent left the burner to the gas stove on in the morning of the incident and that gas accumulated in the room causing the explosion.  (Docket No. 332 at 16.)

Plaintiffs claim that the day after the decedent died, her brother, boyfriend, and cousin visited the apartment and were surprised to see that O'Neill was repainting the room.  (Docket No. 126 at 8.)  The decedent's cousin, who is a lawyer, questioned O'Neill's actions and advised him not to alter the scene until the investigation as to the decedent's death was completed.  (Id.) Plaintiffs also claim that before 8:15 am on March 11, 2010, the day after the explosion, MAPFRE sent an adjuster and a fire expert to the scene, prior to the arrival of the Fire Marshall or inspectors from the Public Service Commission.  (Id.)  Inexplicably, Plaintiffs aver that the government officials permitted MAPFRE's agents to conduct tests of the stove and the gas line even though the usual practice of the Fire Department is to deny access to the scene of a fire to all third parties until after it has conducted its own investigation.  (Id.)

The following facts pertain solely to O'Neill's Motion for Summary Judgment at Docket No. 329.  On February 11, 2013, Sonia Reynes Rivera, acting as Secretary of Elena Properties, signed a Corporate Resolution authorizing O'Neill, as president of Elena Properties, to sell the property to him in his individual capacity.   (Docket No. 362-7.)   The sworn statement accompanying the Corporate Resolution states that Elena Properties "now sold [the property] to Jerome O'Neill."  (Id. at 2.)  The deed of sale was executed on February 13, 2013.  (Docket No. 362-6.)  Plaintiffs claim that following this transaction, O'Neill still advertised the property as owned by the corporation through Elena Properties' website.  (Docket No. 352-3.)

Civil No. 11-1225 (GAG)

III.    **Discussion**

A.   Defendant's Motion for Summary Judgment at Docket No. 332

In moving for summary judgment, Defendants make two arguments which they claim entitles them to judgment as matter of law.  First, they argue that Plaintiffs lack any evidence of a causal connection between Defendants' alleged non-compliance with applicable state permits and/or certifications pertaining to dwellings and propane gas use and the explosion.  (Docket No. 332 at 2, 9.)  Defendants aver that it is an uncontested fact that the property possessed a valid use permit to operate as a guesthouse at the time of the explosion, which was issued on July 10, 1964. (Id. at 11.)  Defendants claim that the property complies with all applicable regulations and codes in force as of July 10, 1964, and that Plaintiffs have failed to present evidence of any violation to codes or regulations that were required as of 1964.  (Id. at 14-15.)  In any event, Defendants claim that any alleged non-compliance with permits was not a proximate cause of the explosion and that the alleged lack of permits, by itself, is not tantamount to liability.  (Id.)  Second, they claim that the evidence on record defeats Plaintiffs' allegations in the complaint that an inconsequential leak in the stove of the apartment was a contributing factor to the explosion.  (Id. at 2, 16-17.)

The court can easily dispose of Defendants' latter argument because Plaintiffs agree that the gas leak from the stove did not cause the explosion.  (Docket No. 348 ¶ 7.)  As such, Plaintiff cannot use said gas leak to impose liability onto Defendants.  Having settled this issue, the court centers its discussion on Defendants' first argument relating to Plaintiffs' alleged failure to establish a causal connection between Defendants' acts and/or omissions and the explosion.

Plaintiffs oppose Defendants' request, arguing that if Defendants had conducted an adequate investigation of the property, sought the applicable permits from the agencies with jurisdiction, and complied with certain standards for gas use they would have discovered that the gas line connected to the stove of the apartment was damaged and improperly installed, and, in

Civil No. 11-1225 (GAG)

consequence, Defendants would have been required to take the necessary measures to correct the situation and ensure their guests' safety. (Docket No. 347.)  Plaintiffs claim that had Defendants done these things, the explosion would have never taken place.  (Id.)  In other words, they claim that because of Defendants' negligence in failing to comply with required permits and certifications for the property, the explosion occurred.  (Id. at 3.)  Further, Plaintiffs contend that because Defendants were operating the property as a guesthouse they owe a heightened duty of care to their guests and with their negligence Defendants violated that duty.  (Id. at 5-6.)  Finally, Plaintiffs argue that a jury should decide the ultimate question of liability and whether Defendants' negligence caused the decedent's demise and Plaintiffs' damages.

In rebuttal, Defendants argue that the objective of their motion was not to dispose of the case in its entirety, but rather to minimize the controversies. (Docket No. 367 at 2.)  They reiterate the specific issues raised in their motion: (1) whether the property complied with the state permits to dwellings and propane gas use; (2) whether there is a causal connection between the explosion and the alleged lack of endorsements from the Puerto Rico Fire Department and the Public Service Commission; and (3) whether the gas leak from the stove was a cause of the explosion.  (Id.) Having already disposed of the latter controversy, the court focuses on the first two issues.[1]

### 1.  Nature of Plaintiffs' Article 1802 Claims

The substantive law of Puerto Rico governs the liability question in this diversity action. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  Article 1802 of the Puerto Rico Civil Code imposes tort liability on any person or entity which, by fault or negligence causes damages to

---

[1] In their supplemental statement of material facts, Plaintiffs set forth a plethora of alleged uncontested facts, many pertaining to specific codes and regulations which they purport Defendants violated.  (Docket No. 349.) Defendants deny or qualify most of those facts.  (Docket No. 366.)  Concerning the regulations that Plaintiffs cite, Defendants mostly argue that they do not apply to the property.  (Id.)  To the extent that Defendants' motion for summary judgment circumscribes to the issues listed above, at this time, the court need not address these additional contested facts and controversies related therewith and strictly confines its discussion to the issues before it.

Civil No. 11-1225 (GAG)

another.  P.R. LAWS ANN. tit. 31, § 5141.  Generally, Puerto Rico law defines negligence as the failure to exercise due diligence to avoid foreseeable risks.  <u>Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.</u>, 124 F.3d 47, 50 (1st Cir. 1997).  To establish liability for negligence, a plaintiff must show that: (1) the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty (i.e., that the defendant was negligent); (3) that the plaintiff suffered damages; and (4) that those damages were caused by the breach of duty (i.e., proximate causation).  <u>Nieves-Romero v. United States</u>, 715 F.3d 375, 378-79 (1st Cir. 2013) (citing <u>Sociedad de Gananciales v. González Padín Co.</u>, 117 P.R. Dec. 94, 106 (1986), 17 P.R. Offic. Trans. 111, 125).  Said requirements cannot be satisfied unless the plaintiff proves, *inter alia*, that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care).  <u>Woods-Leber</u>, 124 F.3d at 50-51.  See <u>Coyne v. Taber Partners I</u>, 53 F.3d 459-60 (1st Cir. 1995).  In most negligence cases, a defendant's duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." <u>Chapman v. E.S.J. Towers, Inc.</u>, 803 F. Supp. 571, 574 (D.P.R. 1992)  (citing <u>Ortiz v. Levvitt & Sons of P.R., Inc.</u>, 101 P.R. Dec. 290 (1973), 1 P.R. Offic. Trans. 407)).

a.   Breach of Duty and Proximate Causation

In this case, which can be characterized as premises liability, Defendants' duty arises by law.  The Puerto Rico Supreme Court has concluded that "the owner or operator of a commercial establishment has a duty to exercise reasonable care to maintain those areas that are accessible to the public, so as to avoid injury to its patrons."  <u>Cline v. Puerto Rico Ports Auth.</u>, 620 F. Supp. 2d 233, 237 (D.P.R. 2008) (citing <u>González Padín Co.</u>, 17 P.R. Offic. Trans. at 104.)  The plaintiff bears the burden of proof to establish that the commercial establishment did not exercise due care to assure the safety of the premises.  <u>Id.</u>  Thus, under Puerto Rico law the owner of a hotel and its

Civil No. 11-1225 (GAG)

operators owe their guests a heightened duty of care and protection.  Woods-Leber, 124 F.3d at 51.

See e.g., Mejías-Quiros v. Maxxam Property Corp., 108 F.3d 425, 427 (1st Cir. 1997); Coyne, 53

F.3d at 458; Goose v. Hilton Hotels, 79 P.R. Dec. 523 (1956) (imposing liability on a hotel for

failing to put a second railing in a slippery stairway near the swimming pool area); Gutiérrez v.

Bahr, 78 P.R. Dec. 473 (1955) (finding a store owner liable for injuries caused to a shopper by a

negligently maintained electric fan).

 To prove that a business owner breached that duty, a plaintiff must show that the defendant

had actual or constructive knowledge of a hazardous or dangerous condition on his premises that

more likely than not caused the damages to the plaintiff.  Vázquez-Filippetti v. Banco Popular de

Puerto Rico, 504 F.3d 43, 50 (1st Cir. 2007);  Cotto v. C.M. Ins. Co., 116 P.R. Dec. 64 (1985), 416

P.R. Offic. Trans. 786, 793-94.  As such, "[t]here is **no** liability for harm resulting from dangerous

conditions of which [the business owner] does not know, and which a reasonable inspection would

**not** have discovered, or from conditions from which no unreasonable risk was to be anticipated."

Mas v. United States, 784 F. Supp. 945, 948 (D.P.R. 1992) aff'd, 984 F.2d 527 (1st Cir. 1993)

(quoting Goose, 79 P.R. Dec. at 523 (emphasis in original)).  As to the requirement of actual or

constructive knowledge,

> [i]n order to establish liability based upon fault or negligence, the [property owner] must have a reasonable opportunity to observe and to correct, or to warn against, the hazardous condition and he must fail or omit to do so.  It is the failure to correct, in the exercise of due care, a known hazardous condition or one of which the [property owner], in the exercise of due care, should be aware . . .  that constitutes fault or negligence.

Mas, 784 F. Supp. at 948.  Notwithstanding the heightened duty of care and protection, the hotel

and its administrator are not liable for their guests' harm unless the harm is reasonably foreseeable.

See Coyne, 53 F.3d at 460-61.  A commercial establishment is thus liable for the damages suffered

11

**Civil No. 11-1225 (GAG)**

by its clients or guests due to hazardous conditions that were known or should have been known by the owner or operator of the commercial establishment. <u>Cline</u>, 620 F. Supp. 2d at 236.

The crux of this case turns on whether Defendants were negligent in operating and maintaining the property as a guesthouse, and, in turn, are liable to Plaintiffs. The negligence question presently before the court is whether Defendants' failure to inspect the property and obtain applicable permits and certifications to ensure the premises were safe for its guests constituted a breach of their heightened duty of care, as owners and administrators of the property—used as a guesthouse. Plaintiffs and Defendants have conflicting opinions.

Plaintiffs agree that the property had a valid use permit to operate as a guesthouse. (Docket No. 348 ¶2.) Said permit was valid at the time of the explosion. Defendants' theory is that because said permit was issued in July 10, 1964, the property only has to comply with applicable standards, codes, and regulations of that time and Plaintiffs do not point to any violations of codes or regulations that were required as of 1964. (Docket No. 332 at 11.) More so, they argue that the property needed not obtain a new use permit because the use it was authorized for in its origin—a guesthouse—had not changed. (<u>Id.</u> at 14.) In addition, they claim that any failure on their part to obtain any applicable permits is inconsequential because there is no causal link between any alleged non-compliance with permits and the explosion. (<u>Id.</u>)

On the other hand, Plaintiffs argue that according to Defendants, time started and stopped on July 10, 1964, when the prior owner of the property obtained a use permit to operate as a guesthouse. (Docket No. 376 at 3.) They contend that Defendants' argument seeking absolution of liability because they had a use permit for the property, which dates back to 1964, must fail. (<u>Id.</u>) Further, they argue that regardless of the valid use permit, Defendants had to obtain a valid permit from the Puerto Rico Fire Department and would have had to demonstrate that the

Civil No. 11-1225 (GAG)

guesthouse complied with the law in 2010, and not the codes from 1964.  (Docket No. 347 at 13.)

In addition, they argue that Defendants should have had the property inspected by the relevant

authorities to ensure that it was operating within the requirements of the law and that its premises

were safe for its guests.  Id.

Plaintiffs argue that a reasonable inspection of the property would have revealed that the

gas tanks were improperly placed and would have been required to be moved.  (Id.)  For this

proposition they provide evidence of the findings of the inspection conducted by the Puerto Rico

Fire Department on May 11, 2010, the day after the explosion, and evidence of an administrative

violation ticket given to O'Neill on behalf of the property.  (Docket No. 362-4.)  Finally, Plaintiffs

aver that even assuming that Defendants did not violate the law a jury can nevertheless find them

negligent by finding that gas leaked from the gas pipe connected to the gas stove causing an

explosion in the apartment they rented to the decedent.  (Docket No. 376 at 2.)  Plaintiffs thus

point to Defendants' failure to meet their heightened duty of care.  More so, they argue that they

have rebutted Defendants' contention that no material issue of fact exists and that a jury may

determine that Defendants were negligent and that their negligence caused the explosion.  (Id.)  In

addition, Plaintiffs posit that the existence of a use permit does not absolve Defendants of liability.

(Id. at 3.)

In sum, Plaintiffs aver that Defendants breached their heightened duty of care in failing to

obtain the required permits and certifications by the appropriate authorities and in failing to have

the property inspected to ensure it was safe.  Plaintiffs further claim that Defendants' failures to

obtain said permits constitute *per se* negligence.

Conversely, Defendants argue they did not violate any codes or regulations because they

had a valid use permit from 1964 and that any regulations cited by Plaintiffs do not apply to the

Civil No. 11-1225 (GAG)

property or its use of gas or electric system.  (Docket No. 367 at 3-4.)  More so, they claim that the Puerto Rico Fire Department's inspection of the property on May 11, 2010, does not find an inherent dangerous condition on the property or a defect in the gas or electrical systems.  (Id.)  Also, that contrary to Plaintiffs' contentions there was no finding by the Fire Department on the gas piping system, no finding of a violation of any Public Service Commission code or regulation and that a requiring a certification of compliance with the National Electrical Code does not mean they committed a violation.  (Id. at 10.)

An examination of the record reveals that O'Neill received an administrative violation by the Puerto Rico Fire Department, which listed as the cause of the violation that the property "does not show endorsement of the P[uerto] R[ico] Firefighters Corp."  (Docket No. 362-4.)  Moreover, the Inspection Report prepared by the Puerto Rico Fire Department, from the investigation they conducted of the property on May 11, 2010, the day after the explosion, states, in relevant part, that "the propane gas tanks in the property must be moved to the exterior of the building and that a certification from the Public Service Commission approving the new location of the tanks must be provided."  (Docket No. 348-8.)  Plaintiffs also claim that the property failed to comply with the National Electrical Code and, in effect, said Inspection Report further states that an "electrical certification must be provided [for the property] showing that the entire system complies with the National Electrical Code."  (Id.)

The parties' conflicting theories of Defendants' alleged negligence pose various questions.  For instance, whether Defendants knew or should have known that the old gas pipes that were transporting gas to the gas stove constituted a dangerous condition on the property; whether Defendants exercised due care in carrying out reasonable inspections of the property's premises for hazards that may endanger their guests; and, whether Defendants failed to comply with applicable

Civil No. 11-1225 (GAG)

codes and regulations as to the premises and the properties' use of propane gas.  These questions turn on whether Defendants breached their duty of care owed to their guests in failing to maintain the apartments in the property safe, so as to avoid injury to its guests.  Cline, 620 F. Supp. 2d at 237.  In other words, that Defendants did not exercise due care to assure the safety of the premises.  Id.

Particularly damning to Defendants' arguments are the results of the inspection conducted by the Puerto Rico Fire Department, where said agency ordered Defendants to: (1) move the gas cylinders and obtain a certification of the new location by the Public Service Commission; (2) obtain adequate certifications of compliance by the Puerto Rico Fire Department; and (3) obtain a certification of compliance with the National Electrical Code.  (Docket No. 348-8.)  The record shows that the only inspection conducted on the property was done on May 11, 2010, the day after the explosion.

In the present case, an examination of Plaintiffs' arguments in their complaint and opposition to Defendants' motion for summary judgment reveals that Plaintiffs attribute negligence onto Defendants in their failure to adequately correct the dangerous condition involving the use of the gas stove connected to the old and corroded gas line.  "It is the failure to correct, in the exercise of due care, a known hazardous condition or one of which the [property owner], in the exercise of due care, should be aware, or the failure to effectively warn invitees of its presence, that constitutes fault or negligence" in a premises liability claim.  Mas, 784 F. Supp. at 948 (emphasis added).

A reasonable jury could find that Defendants breached their heightened duty of care for various reasons.  On one hand, the property, its premises, and gas system—which presumably date back to 1964—had never been inspected by relevant authorities to ensure it was operating in a safe

Civil No. 11-1225 (GAG)

manner and complied with applicable standards of health and safety, so as to protect their guests from harm. <u>Cline</u>, 620 F. Supp. 2d at 237. On the other hand, Defendants could be found to have breached their heightened duty of care by failing to obtain applicable permits and/or certifications of compliance with pertinent codes and regulations from certain authorities such as the Puerto Rico Fire Department and the Public Safety Commission.

As noted, "[t]here is no liability for harm resulting from dangerous conditions of which [Defendants] do not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated." <u>Mas</u>, 784 F. Supp. at 948. A reasonable jury could also find that had an adequate investigation been performed, or the requisite permits sought, the gas stove would have been installed through a gas line that complied with applicable regulations or Defendants would have installed an electric stove. In any event, the dangerous condition would have been corrected and no explosion would have occurred. Because the failure to correct, in the exercise of due care, a known hazardous condition or one of which the property owner, in the exercise of due care, should be aware of constitutes negligence (breach of duty), the resolution of these issues of fact could certainly affect the outcome of this case, particularly the satisfaction of the breach of duty element of Plaintiff's claim.

Having examined Plaintiffs' evidence, in the light most favorable to them, as the non-moving party, the court finds that a reasonable jury could, upon weighing the evidence and making credibility determinations, decide in favor of either party whether Defendants breached their heightened duty of care. Thus, genuine material factual disputes exist as to the breach of duty element of the present tort claim, the resolution of which must be left to the trier of fact. It is for the jury, not the court, to find which of the disputed facts occurred and thus determine whether Defendants exercised reasonable care in operating the guesthouse. See <u>Marshall v. Pérez Arzuaga</u>,

16

Civil No. 11-1225 (GAG)

828 F.2d 845, 849 (1st Cir. 1987) (noting questions of fact involving the elements of a tort are properly jury questions).

Despite the court's determination that an issue of fact exists with respect to the duty element, the court must still address the issue of foreseeability.

b.  Foreseeability

Once a plaintiff has demonstrated that the defendant was negligent (breached the duty of care), she must then demonstrate that the defendant's negligence actually caused her injuries and the defendant could have reasonably foreseen that the injuries would result from his acts or omissions.  Vázquez-Filippetti, 504 F.3d at 49;  Marshall, 828 F.2d at 849 (citing Jimenez v. Pelegrina, 112 P.R. Dec. 881, 885 (1982)).  "As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause."  Vázquez-Filippetti, 504 F.3d at 49.  "Key in any negligence action is the element of foreseeability, necessary to establish causation. Thus, a defendant, even though negligent, will be relieved of liability whenever an intervening cause produces an unforeseeable result."  Chapman v. E.S.J. Towers, Inc., 803 F. Supp. 571, 574 (D.P.R. 1992);  see also Barreiro v. Universal Ins. Co., ___ F. Supp. 3d ___ (D.P.R. March 13, 2015), 2015 WL 1138342, at *5.  Namely, liability will only arise under a failure to act if the damages complained of were reasonably foreseeable to the defendant; in other words, if the damages could have been avoided had the defendant acted with due care. Tit. 31, § 3022;  Woods-Leber, 124 F.3d at 52 (citations omitted).

"In negligence cases, determinations of foreseeability and of whether a defendant acted reasonably fall within the province of the jury. Hence, a court should be cautious in using the summary judgment device to dispose of such cases."  Chapman, 803 F. Supp. at 573 (citing TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450 n.12 (1976)).  Assuming, *arguendo*, that

**Civil No. 11-1225 (GAG)**

Defendants breached their heightened duty of care, the explosion and the decedent's injuries as a consequence thereof must have been reasonably foreseeable to Defendants.

Upon considering both versions of the facts of this case in the light most favorable to Plaintiffs, as the non-moving party, the court concludes that a reasonable jury could find that the explosion (and resulting damages) was a foreseeable consequence of Defendants' failure to have the property duly inspected to ensure its compliance with fire and propane gas use safeguards.   A reasonable jury could also find that it was foreseeable for an explosion to occur because of the property's inadequate premises, resulting from its noncompliance with adequate health and safety regulations for commercial establishments, such as guesthouses.   Further, weighing the parties' accounts of the facts, a reasonable jury could find that it was foreseeable for Defendants that a property with a use permit dating back to 1964, with gas piping installed on or around those dates, and with no compliance with more current standards of safety, could constitute a dangerous cite for its guests.   Finally, Plaintiffs' contention that O'Neill knew that a guest complained of gas smell prior to the explosion on May 10, 2010, could lead to a reasonable inference that a gas leak was certainly foreseeable, which could cause a fatal accident.   (See Docket Nos. 349 ¶ 29; 349-18.) O'Neill, however, contends that the issue was resolved.   (Docket No. 349-18.)

The parties dispute the element of foreseeability; thus a determination of whether it was reasonably foreseeable for Defendants that, at the time and place in question, an explosion could ensue due to a gas leak, under the circumstances described above, remains a material question of fact.   Because foreseeability is a central issue in premises liability claims, as it is an element of both breach of duty and proximate cause, Vázquez-Filippetti, 504 F.3d at 49;  Barreiro, 2015 WL 1138342, at *6, and material issues of fact exist as to said element, the resolution of which possesses the capacity to sway the outcome of this case, the determination of foreseeability in this

Civil No. 11-1225 (GAG)

case is a question for the jury and not the court on summary judgment.  Marshall, 828 F.2d at 849 ("Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions.  In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question is one for the jury.") (citing Jimenez, 112 P.R. Dec. at 885 (1982)).

Wherefore, Defendants' Motion for Summary Judgment at Docket No. 332 is hereby **DENIED.**

### 2.  Product Liability Claims

As a final note, in their amended complaint Plaintiffs lodged product liability and design defect claims against the manufacturer of the stove located in the apartment and the suppliers of the gas tanks.  (Docket No. 126 at 3, 14-15.)  On March 12, 2013, pursuant to the terms of a settlement agreement reached by the parties, the court entered partial judgment dismissing with prejudice all claims between Plaintiffs and the manufacturer of the stove, co-defendants Brown Stove Works, Inc., EMC Insurance Companies, and EMCASCO.  (Docket No. 186.)  As a result of their dismissal, all of Plaintiff's claims for product liability due to the stove of the apartment's alleged manufacturing defect were dismissed with prejudice.  On that same day, also pursuant to the terms of a settlement agreement reached by the parties, the court entered partial judgment dismissing with prejudice all claims between Plaintiffs and the suppliers of the gas tanks, co-defendants Yohaira Lopez, her husband, their conjugal partnership, YLD Gas Service, Manuel Lopez, his husband, and their conjugal partnership, ACE Insurance Company, and all entities insured by ACE, including Escalera Gas and Tropigas.  (Docket No. 187.)  Accordingly, all of Plaintiffs' allegations which fall within the rubric of product liability and design defect concerning

Civil No. 11-1225 (GAG)

the alleged manufacturing defect of the gas stove and the alleged supply of inherently dangerous products have been dismissed and are no longer being litigated.

B.  O'Neills Motion for Summary Judgment: O'Neill's Personal Liability at Docket No. 329

Plaintiffs allege that O'Neill's negligence as administrator of the property caused the decedent's damages and ultimately her death.  (See Docket Nos. 126 ¶¶ 17-21; 329 at 3.)  Plaintiffs purport O'Neill was negligent in renting a property that failed to comply with requisite regulations of the Fire and Building Codes of Puerto Rico and failing to have the property inspected and thus failing to obtain the required permits and endorsements from the Puerto Rico Fire Department and the Public Service Commission or any government agency with jurisdiction.  See id. ¶¶ 17-19.  See also Docket No. 329 at 10.  More so, Plaintiffs impute negligence onto O'Neill because the room the decedent rented had a flammable gas tank connected to the stove and he never obtained the necessary permit to do so.  Id. ¶ 20; see also Docket No. 329 at 10.   Finally, Plaintiffs claim that O'Neill was negligent in installing the gas tanks without a certification from the Puerto Rico Public Service Commission.  Id. ¶21; see also Docket No. 329 at 10.

O'Neill moves for summary judgment arguing that the court should dismiss all claims against him because, "even assuming as uncontested all [of] the allegations made against him" by Plaintiffs, O'Neill is not liable as a matter of law.  (Docket No. 329 at 6.)  O'Neill claims that Plaintiffs' allegations against him are related to the alleged non-compliance of the property with certain regulations and that all acts and/or omissions attributed to him are related to the rental business of the property, which is owned and operated by Elena Properties, a corporate entity. (Docket No. 329 at 10.)  He claims that Plaintiffs' allegations are directly related to his duties as an officer of Elena Properties and that all acts and/or omissions were made on behalf of the

Civil No. 11-1225 (GAG)

corporation.  (Id. at 11.)  As such, he argues that any action or decision taken by him as officer of Elena Properties solely holds the corporation responsible and not himself as an individual.  (Id. at 7.)  Therefore, he is shielded from personal liability and any liability, if any, must be borne by Elena Properties alone.  (Id. at 11.)  For purposes of O'Neill's summary judgment motion, he admits all the acts and/or omissions alleged by Plaintiffs.  (Id. at n.3.)  Accordingly, for the purposes of O'Neill's liability, the court deems as admitted all negligent acts and/or omissions by him.

Plaintiffs oppose O'Neill's request for the court to discharge him of liability and dismiss all claims against him.  (Docket No. 350.)  They argue that O'Neill is Elena Properties' alter ego and the court should pierce the corporate veil and not allow him to escape liability by respecting the corporate form of Elena Properties, which is a façade.  (Id. at 2-3.)  Notably, Plaintiffs claim that, during the course of this litigation, and knowing he might be liable to Plaintiffs, O'Neill sold the sole asset of Elena Properties to himself—the property—in exchange for the corporations' shares, leaving a nominal amount of cash as the corporation's only assets.  (Id. at 2.)  Plaintiffs allege that such "transfer" left the corporation bereft of assets to avoid liability and is thus unlawful and subject to strict scrutiny.  (Id. at 3.)  Plaintiffs bring forth this and other evidence which the court will discuss infra to demonstrate "fraudulent intent" by O'Neill in buying the property from Elena Properties.  Further, Plaintiffs present evidence of O'Neill failing to respect the corporate structure of Elena Properties to show that O'Neill is Elena Properties' alter ego and, in turn, pierce the corporate veil and hold O'Neill personally liable.  (Docket Nos. 329 at 3, 5-6; 377.)

## 1.  Piercing the Corporate Veil

In diversity cases like this one, courts "appl[y] the choice-of-law rules of the forum state." Wadsworth, Inc. v. Schwarz–Nin, 951 F. Supp. 314, 320 (D.P.R. 1996).  This court has applied the

Civil No. 11-1225 (GAG)

"most significant contacts" test in tort cases, as well as in the judicial process of piercing the corporate veil.  Nieto-Vincenty v. Valledor, 22 F. Supp. 3d 153, 161 (D.P.R. 2014).  See, e.g., Mercado–Salinas v. Bart Enter. Int'l., Ltd., 800 F. Supp. 2d 354, 359 (D.P.R. 2011).  Here, the parties' significant contacts were in Puerto Rico, Elena Properties was incorporated and located in Puerto Rico, and all interactions between Plaintiffs and Defendants, including the accident giving rise to this case, occurred in Puerto Rico.  Accordingly, this court applies Puerto Rico law to the veil-piercing analysis.  See  Nieto-Vincenty, 22 F. Supp. 3d at 162.

Under Puerto Rico law, corporations are presumed to be legal entities separate from their officers, directors, and shareholders. P.R. LAWS ANN. tit. 14, § 3501 et seq.;  Colon v. Blades, 757 F. Supp. 2d 107, 109 (D.P.R. 2010); Milan v. Centennial Commc'ns. Corp., 500 F. Supp. 2d 14, 26 (D.P.R. 2007) (citing Fleming v. Toa Alta Dev. Corp., 96 P.R. Dec. 240, 243 (1968)).  Thus, corporate directors, officers, and shareholders are generally not liable for the debts of the corporation."  Blades, 757 F. Supp. 2d at 109;  Wadsworth, Inc., 951 F. Supp. at 322.  "As a rule, this shield will almost never be dismantled."  Id.  There are, however, a variety of exceptions to this rule.  Id.  The doctrine of piercing the corporate veil disregards the fiction of corporate entity and limited responsibility.  Fed. Deposit Ins. Corp. v. Martinez Almodovar, 671 F. Supp. 851, 876 (D.P.R. 1987).  In certain circumstances, the "corporate veil" may be pierced and individual liability imposed upon the individuals for which the corporate entity served merely as an alter ego.  Nieto-Vincenty, 22 F. Supp. 3d at 162.  Veil-piercing is also supported "[w]here the directors or officers use the corporation to commit fraud."  Wadsworth, Inc., 951 F. Supp. at 322 (citing South P.R. Sugar Corp. v. Sugar Board, 88 P.R. Dec. 43 (1963)).

In turn, "[a] plaintiff may pierce the corporate veil by presenting evidence showing that "the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public

22

Civil No. 11-1225 (GAG)

policy, justify inequity, protect fraud or defend crime." Rivera v. Reed, No. 09-1160 (GAG), 2010 WL 683406, at *2 (D.P.R. Feb. 22, 2010) (citing Colon v. Rinaldi, 2006 WL 3421862 at *6 (D.P.R. 2006)).  The general rule is that a corporate entity may be disregarded in the interests of public convenience, fairness, and equity.  Brotherhood of Locomotive Engrs. v. Springfield Terminal Ry., 210 F.3d 18, 26 (1st Cir. 2000); South P.R. Sugar Corp., 88 P.R. Dec. at 55.  Courts have emphasized that "[t]he conditions under which the corporate entity will be disregarded vary according to the circumstances present in each case." Crane v. Green & Freedman Baking Co., 134 F.3d 17, 22-23 (1st Cir. 1998) (internal citations omitted).  "The legal standard for when it is proper to pierce the corporate veil is notably imprecise and fact-intensive." Crane, 134 F.3d at 21-22.

The party seeking to pierce the corporate veil has the burden of producing "strong and robust evidence" that the corporate form should be disregarded.  Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980).  See also Milan, 500 F. Supp.2d at 26; Diaz Aponte v. Com. San Jose, Inc., 130 P.R. Dec. 782, 800 (1992).

### a. Federal Common Law Factors

This court frequently considers a number of federal common law factors to determine whether to disregard the corporate entity: (1) undercapitalization; (2) nonpayment of dividends; (3) extensive or pervasive control by the shareholder or shareholders; (4) intermingling of the corporation's funds, properties or accounts; (5) a failure to observe corporate formalities; (6) siphoning of funds from the corporation; (7) an absence of corporate records; (8) non-functioning officers or directors.  See Rivera, 2010 WL 683406, at *2; Nieto-Vincenty, 22 F. Supp. 3d at 162; Velazquez v. P.D.I. Enterprises, Inc., 141 F. Supp.2d 189, 193 (D.P.R 1999) (citing Town of Brookline v. Gorsuch, 667 F.2d 215, 221 (1st Cir. 1981).  The Puerto Rico Supreme Court has

Civil No. 11-1225 (GAG)

adopted a similar analysis in holding that "a corporation is the alter ego or business conduit of its stockholders when there is such unity of interest and ownership that . . . the corporation actually is not a separate and independent entity."  D.A.C.O v. Alturas Fl. Dev. Corp., 132 P.R. Dec. 905 (1993).

At the outset, it is an undisputed fact that, at all times relevant, O'Neill was the sole officer of Elena Properties and he acted as the corporation's Director, President, Treasurer and Secretary. (Docket No. 348-4.)  O'Neill, nevertheless, claims that a corporation's legal capacity to sue and be sued entails that its directors and officers are not personally liable for the liabilities of a corporation and that the fact that one person is the only stockholder of a corporation does not authorize the imposition of individual liability.  (Docket No. 329 at 7-8.)

Plaintiffs provide the following evidence in support of their contention that O'Neill was Elena Properties' alter ego and, therefore, should not be afforded protection against personal liability.  They aver that most of the federal common law factors militate in favor of a jury determination to pierce the corporate veil.  (Docket No. 377 at 4-5.)  As to the first factor—undercapitalization—Plaintiffs maintain that O'Neill sold the property to himself thereby divesting Elena Properties of its single most valuable asset and leaving the company with the cash it had at hand.  (Docket Nos. 362-6; 362-3.)  Concerning the second factor—nonpayment of dividends—Plaintiffs aver that the annual corporate reports fail to mention the payment of dividends by Elena Properties.  (Docket No. 362-3.)  As to the third factor—extensive or pervasive control by the shareholder or shareholders—Plaintiffs establish that at all relevant times, O'Neill was the sole officer, resident agent, director, and shareholder of Elena Properties and that he acted as President, Treasurer and Secretary.  (Docket No. 352-1.)  Concerning the fourth factor—intermingling of funds—Plaintiffs bring evidence of confused intermingling of funds, for example, that O'Neill

Civil No. 11-1225 (GAG)

used his own funds or those of Vista Farms, his d/b/a/, to pay corporate expenses of the property operating as a guesthouse.  (Docket No. 348-1 at 5.)

As to the fifth factor—failure to observe corporate formalities—Plaintiffs argue that O'Neill made no efforts to maintain corporate formalities because: (1) he pays Elena Properties' only employee, Teresa Pajal, who conducts the day-to-day maintenance for the property, through Vista Farms, even though Elena Properties has its own bank account (See Docket No. 348-1 at 2-5); (2)  the gas bills for the property are issued to O'Neill and not Elena Properties (Docket No. 362-1); and (3) that in 2014, O'Neill represented to the public that he was the owner of the property (Docket No. 348-5) and at other times he represented that Elena Properties owned it as well  (Docket No. 352-3.)  Plaintiffs further contend that: Elena Properties does not have a principal office but instead is run out of the Vista Farm's office; that Elena Properties has no other officers or employees, other than Ms. Pajal, and that O'Neill never has been an employee of Elena Properties.  (Docket No. 348-1 at 2.)  Regarding the sixth factor—siphoning of funds or using the corporate funds for non-corporate purposes—Plaintiffs admit they have no evidence of this. (Docket No. 377 at 5.)  Finally, as to the seventh factor—absence of corporate records—Plaintiffs aver that Elena Properties files its annual reports.[2]  (Docket No. 362-3.)

In addition to the above factors, the non-issuance of stock by a corporation is a factor supporting piercing the corporate veil.  United States v. JG-24, Inc., 331 F. Supp. 2d 14, 63 (D.P.R. 2004) aff'd, 478 F.3d 28 (1st Cir. 2007); GM Leasing Corp. v. U.S., 514 F.2d 935, 939-40 (10th Cir. 1975).  The individual who is the alter ego is the person in control and need not be a stockholder where the company issues no stock.  Id.  An examination of the record leaves doubt as

---

[2] The court notes that although Plaintiffs have not demonstrated evidence of every factor considered by the court when analyzing a claim of alter-ego and veil-piercing, "[n]o one of these factors is either necessary or sufficient to disregard corporate structure."  Velazquez, 141 F. Supp. 2d at 193.

Civil No. 11-1225 (GAG)

to whether Elena Properties issued stock.  A review of Elena Properties' corporate records does not specify that it issued stock.  (Docket No. 362-3.)  This issue constitutes a material question of fact.

On the other hand, O'Neill argues that Plaintiffs do not offer any evidence to establish an inadequate separation between Elena Properties, himself and O'Neill.  (Docket No. 365 at 3, 6.) O'Neill contends that Plaintiffs fail to create a genuine issue of material fact, and, as such, he is entitled to summary judgment as a matter of law because he is not Elena Properties' alter ego and any action or decision taken by him as President of the corporation holds the corporation liable and not himself individually.  (Id. at 4.)  In addition, O'Neill argues that Elena Properties is a corporate entity dedicated to renting the property and that in 2009 and 2010 the decedent's employer, Open Systems, rented an apartment in the property for the decedent and Open Systems paid Elena Property for said rental.  (Docket No. 329 at 9.)

As to Plaintiffs' contention that the gas bills and/or reports filled out by third parties were in his name and not the corporations', O'Neill argues that this does not create a genuine issue of fact that he was the corporation's alter ego but only establishes that third parties assumed that he was the owner of the corporation.  (Id. at 6.)  In refuting Plaintiffs' averments, O'Neill argues that the property where the accident happened was owned by Elena Properties, a corporation engaged in the business of renting the apartments in the property.  (Docket Nos. 365; 329-1 ¶ 2; 351 at ¶ 2.) O'Neill also avers that he personally engages in said business of operating the guesthouse. (Docket No. 364 at 3.)  He also opposes Plaintiffs' contentions claiming that the following facts are undisputed: Open Systems rented the apartment for the decedent from Elena Properties and Elena Properties invoiced Open Systems and it paid Elena Properties through wire transfers. (Docket No. 329-4.)  As such, O'Neill claims that the corporate personality of Elena Properties was kept separate from him.  (Docket No. 365 at 7.)

Civil No. 11-1225 (GAG)

Plaintiff further alleges that: he is a partner at Vista Farms, S.E. (Docket No. 364 at 4); Elena Properties does not have an office and is run out of the Vista Farms office (Docket No. 348-1 at 2); he receives the mail for Elena Properties at P.O. Box 1834, Juana Díaz, Puerto Rico 00795, which is the address of the corporation's designated office  (Id.); Elena Properties pays its own bills (Id. at 5); Elena Properties does not have any employees  (Id. at 2); the day-to-day maintenance of the property is performed by Teresa Pajal  (Id. at 2-3); for the convenience of having one payroll Ms. Pajal is on Vista Farm's payroll  (Id. at 5-6;) and Vista Farms bills Elena Properties for Ms. Pajal's services (Id. at 5-6.)  O'Neill also avers that Elena Properties sold the property to him three years after the date of the accident.  (Docket No. 364 at 5.)  Finally, concerning Plaintiffs' evidence of a website from May 21, 2014, advertising the apartments of the property, O'Neill argues this evidence is not admissible, and, in the alternative, it is irrelevant to the pertinent dates and facts alleged in the complaint.  (Docket No. 364 at 7.)

### b. Fraudulent Intent

In addition to the federal common law factors, Plaintiffs offer evidence of certain actions by O'Neill as an officer of Elena Properties, which further supports piercing the corporate veil to prevent unfairness or injustice.  See Rivera, 2010 WL 683406, at *2.  Plaintiffs argue that O'Neill sought to commit fraud against them, as potential creditors, by buying the property or against the Puerto Rico Tax authorities by purporting to start a business through Elena Properties only to benefit from not paying taxes on rent for ten years.  (Docket Nos. 350 at 3-6; 377 at 2-4.) Plaintiffs claim that O'Neill intended to defraud them when he bought the property from Elena Properties, thereby divesting the corporation of its sole asset and potentially defrauding them as likely creditors who may be entitled to collect on a favorable judgment.  (Docket Nos. 350 and 377.)  O'Neill fires back alleging that Plaintiffs are not yet creditors of the corporation; thus, their argument is premature.  (Docket No. 365 at 7.)  Though the present case is ongoing and no

Civil No. 11-1225 (GAG)

judgment has been entered in favor of Plaintiffs, the argument is not premature to the extent that O'Neill is asking the court to release him from personal liability but Plaintiffs argue that he intended to commit fraud and said argument touches on whether the court will pierce the corporate veil and impose liability onto O'Neill.  See Wadsworth, Inc., 951 F. Supp. at 322 (holding that "[w]here the directors or officers use the corporation to commit fraud, courts will 'pierce the corporate veil' and hold those officers or directors personally liable.").

In the context of veil-piercing in an ERISA case, the court found that fraudulent intent is a necessary element to pierce the corporate veil.  Alman v. Danin, 801 F.2d 1 (1st Cir. 1986); see also Crane, 134 F.3d at 27.  In general, to prove intent to defraud, a plaintiff must show either that the defendant intended to receive a benefit or intended to cause actual or potential loss to the plaintiff.  Wadsworth, 951 F. Supp. at 326-27.  Plaintiffs argue that in buying the property from Elena Properties, O'Neill intended to cause them a potential loss.  In other words, that he alienated the property in potential fraud to them as creditors.   In evaluating whether the alienation of property was fraudulent, the trier of fact must weigh the indication of fraud or fraudulent intent with several factors, such as: (1) haste in the alienation (date of the transfer); (2) the debtor's insolvency; (3) the relation of kinship; (4) closeness or trust with the buyer; (5) the state of the business; and, (6) status of the judicial claims pending against him.  De Jesus Diaz v. Carrero, 12 P.R. Offic. Trans. 786 (1982).

Plaintiffs claim that the purpose of the transaction—selling the property to O'Neill—was to defraud them in the face of this litigation so that they could not collect on a potential judgment. (Docket Nos. 350 at 3; 377 at 2.)  The court now delves into the evidence Plaintiffs produce of the above factors.  First, as to the date of the transaction—O'Neill, on behalf of Elena Properties, sold the property to himself on February 13, 2013, while this litigation is pending and after he had

**Civil No. 11-1225 (GAG)**

requested the court, through summary judgment, to shield him from personal liability.  (See Docket No. 362-6.)  Second, regarding the debtor's insolvency, it is evident that through the transaction, Elena Property lost its most valuable asset because after the sale, Elena Properties' net worth went from $620,666.00 in 2012 to $17,109.00 in 2013.  (See Docket No. 362-3.)  The third and fourth factors—the relationship between the debtor and the transferee and closeness between them—are analyzed together.  At all times relevant, O'Neill was the sole officer, resident agent, and shareholder of the corporation and he acted as Director, President, Treasurer and Secretary. (Docket No. 352-1).  Because O'Neill is the only natural person which figures as an officer and director of Elena Properties, a reasonable jury can infer that he directs the company's actions.  As to the fifth factor—the state of the business—Plaintiffs provide a photo of a website from May 21, 2014, where Elena Properties is advertising the rental of the property to demonstrate that Elena Properties continues to operate the rental business, possibly through O'Neill, despite the fact that O'Neill is now the owner of the property and not Elena Properties.  (Docket No. 352-3.)  As to the sixth and final factor—the status of the judicial claims—the instant suit is pending and currently at the dispositive motions stage.

There is evidence here that O'Neill, through his domination of Elena Properties and acting as sole proprietor, officer and director of Elena Properties caused the corporation to sell the property to himself, leaving the corporation with its cash at hand, at a time when there is pending litigation against both the corporation and O'Neill and O'Neill is seeking to be relieved of any liability.  A reasonable jury could find that this transaction lacks a business justification and the fact that O'Neill fails to adequately provide a legitimate business purpose for this transaction could be fatal to his request to be released of liability.  Viewing this evidence in the light most favorable to Plaintiffs, a reasonable jury could find that in executing the sale of the property to himself,

Civil No. 11-1225 (GAG)

1   O'Neill acted with a fraudulent intent.  Whether or not O'Neill intended to commit fraud is a

2   factual issue for the jury and its resolution could sway the outcome of his personal liability

3   determination.

4          Viewing all the evidence presented by Plaintiffs in the light most favorable to them as the

5   non-moving party, the court finds that they have created a triable issue of material fact as to

6   whether O'Neill was the alter ego of Elena Properties, confusing his identity with that of the

7   corporation.  Plaintiffs have also created a triable issue of fact as to whether O'Neill acted with

8   fraudulent intent in purchasing the property from Elena Properties.  These factual disputes turn on

9   whether the court should pierce the corporate veil and impose individual liability as to O'Neill.

10  Because this determination requires an extremely fact-sensitive analysis, it is a question best suited

11  for a jury.  Rivera, 2010 WL 683406, at *3;  see also Crane, 134 F.3d at 22 (recognizing that

12  federal courts have held that veil-piercing "is the sort of determination usually made by a jury

13  because it is so fact specific" and that as a matter of federal procedure in diversity cases, "the issue

14  of corporate entity disregard is one for the jury") (citing  Wm. Passalacqua Builders, Inc., 933 F.2d

15  at 137;  FMC Finance Corp. v. Murphree, 632 F.2d 413, 421 & n.5 (5th Cir. 1980)).

16         Here, Plaintiffs present evidence, albeit disputed by O'Neill, to support veil-piercing.  A

17  reasonable jury may thus find that O'Neill is Elena Properties' alter ego, and, as such, that he may

18  be liable to Plaintiffs due to his alleged negligent acts and/or omissions.  A person who is the alter

19  ego of a corporation, or the individual behind the corporate veil when pierced, is personally liable

20  for the corporations' liabilities.  JG-24, Inc., 331 F. Supp. 2d at 63.  The evidence described above

21  could also allow a reasonable jury to conclude that sheltering O'Neill from liability and insisting

22  that Elena Properties be restricted by its corporate form would be manifestly unjust.

23

24

**Civil No. 11-1225 (GAG)**

In view of the above, the principal contested issue of O'Neill's summary judgment motion—whether the court should pierce Elena Properties' corporate veil—is one best suited for the jury. As Plaintiffs have created material issues of fact with regard to the issue of O'Neill's liability as an alter ego, the court hereby **DENIES** defendant O'Neill's motion for summary judgment at Docket No. 329.

**IV. Conclusion**

Since reasonable minds may differ in answering the issues raised by the parties in both motions, it would be improper for the court to usurp their resolution from the jury. Accordingly, the court hereby **DENIES** Defendants' Motion for Summary Judgment at Docket No. 332 and **DENIES** defendant O'Neill's motion for summary judgment at 329.

This case is hereby referred to Magistrate Judge Marcos Lopez for the holding of a pre-trial-settlement conference. The parties should file a **JOINT**, proposed pre-trial memorandum. The conference and deadline for the joint filing shall be set by Magistrate Judge Lopez. The parties shall engage in further, good-faith negotiations prior to the conference, as Judge Marcos Lopez may issue any other settlement directives. The court hopes that the instant ruling will aid the parties in reaching an acceptable compromise which will end this litigation.

**SO ORDERED.**

In San Juan, Puerto Rico this 25th day of August, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge